IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

SANDRA LUGO,                     :     CIVIL ACTION
                                 :     NO. 20-5832
          Plaintiff,             :
     v.                          :
                                 :
WALMART, INC,                    :
                                 :
          Defendant.             :

M E M O R A N D U M

EDUARDO C. ROBRENO, J.                         July 22, 2022

## I.   INTRODUCTION

Plaintiff Sandra Lugo brings this action against Defendant Walmart Inc. ("Walmart") alleging discrimination, retaliation, and false imprisonment in connection with Walmart's termination of her employment. She brings claims under Title VII of the Civil Rights Act of 1964 ("Title VII"), the Age Discrimination in Employment Act (the "ADEA"), the Americans with Disabilities Act (the "ADA"), the Pennsylvania Human Relations Act (the "PHRA"), the Family and Medical Leave Act (the "FMLA"), and under Pennsylvania common law.

Walmart moves for summary judgment on all of Plaintiff's claims. Plaintiff does not contest the motion as to her claims for age discrimination under the ADEA and PHRA, so the motion will be granted as to those claims. As set forth below, the motion will also be granted as to Plaintiff's claims for national origin discrimination under Title VII and the PHRA and

1

for false imprisonment, but will be denied as to Plaintiff's claims for disability discrimination under the ADA and PHRA and for retaliation in violation of the FMLA.[1]

## II.   BACKGROUND[2]

Plaintiff is a 54-year-old Puerto Rican woman. She began her employment with Walmart in 1997. At the time of her termination, Plaintiff worked as a full-time customer service manager.

Plaintiff avers that at all times relevant to this litigation, she suffered from fibromyalgia and depression. Plaintiff's condition required her, on occasion, to take leave from work pursuant to the FMLA.[3] In consideration of Plaintiff's fibromyalgia, Walmart also agreed to an accommodation, pursuant to which it was to provide her with a stool or chair when she needed to work behind a desk or counter.

Plaintiff testified in her deposition that Deborah Jenkins, the store manager and Plaintiff's immediate supervisor, often

---

[1]    Walmart has also filed a motion for leave to file a reply brief for the purpose of challenging Plaintiff's reliance on two employee statements that it claims were not produced in discovery. Because the Court does not rely upon either of the challenged statements in resolving the motion for summary judgment, that motion will be denied as moot.

[2]    As required at the summary judgment stage, the Court views the facts "in the light most favorable" to the nonmoving party and draws "all reasonable inferences" in that party's favor. Young v. Martin, 801 F.3d 172, 174 n.2 (3d Cir. 2015).

[3]    Plaintiff took leaves of absence pursuant to the FMLA in 2002, 2016-17, and from April 13, 2018 through April 4, 2019. Lugo Dep. 92:15-96:13; 97:13-22; 99:2-100:8; 119:6-9, ECF No. 24-1.

refused to honor her accommodation and told Plaintiff "there's nothing wrong with you." Lugo Dep. at 122:7-8, ECF No. 24-1. Plaintiff testified further that when she told Jenkins she had been diagnosed with depression, Jenkins accused her of "faking." Id. at 161:22. Plaintiff once texted Jenkins that she had to go home to rest, to which Jenkins responded "[d]on't start with me." Ex. F, ECF No. 26-1. When Lugo took leave on July 22, 2019, Jenkins texted Plaintiff "U hv [sic] real issues." Id.

The errata sheet attached to Plaintiff's deposition also seeks to add to her testimony that Jenkins "constantly belittled [Plaintiff] for being 'Puerto Rican' by calling [her] 'bruja,' a derogatory Spanish name for 'witch.'" Id. at 280:24-25.

During the time Plaintiff worked for Walmart, Walmart began giving "Happy to Help" coupons ("HTH coupons") to cashiers. These coupons were worth fifty cents each and were presumably for Walmart employees to give to customers. The following instruction is printed on the back of each HTH coupon: "One-time use only at Walmart U.S. store locations . . . . Not valid for Walmart Associate[4] use." Id. Ex. 3, ECF No. 24-1.

In August 2019, based upon a review of store data, Walmart's Market Asset Protection Manager Amy Jankaitis identified a few potential employees who were suspected of

---

[4]     Walmart refers to its employees as "Associates." Def's Br. at 1 n.1, ECF No. 23.

stealing company property. To investigate the potential theft,
Jankaitis contacted Asset Protection Assistant Store Manager
Austin Taylor, who reviewed video surveillance of the suspected
incidents. On the surveillance tape, Taylor claims to have seen
Plaintiff, on four occasions, using HTH coupons in transactions
for herself and other Walmart employees.

On August 24, 2019, Plaintiff was called into a meeting
with Taylor and Brittney Fitzcharles, an Asset Protection
Assistant Store Manager from a nearby Walmart Store. According
to Plaintiff, Taylor told her they had called her in because she
"stole . . . $2.50." Id. at 56:3-4, ECF No. 26-1. Plaintiff
testified that when she denied stealing, Taylor "read [her] the
Miranda rights." Id. at 56:12-13. Taylor then told her she was
being terminated for her purported misuse of HTH coupons.[5]
Plaintiff further testified that Taylor asked her to pay back
the $2.50 or he and Fitzcharles would "call the police." Id. at
251:13-14.

Based on the record before the Court, it is unclear who
made the ultimate decision to terminate Plaintiff. Both Jenkins
and Fitzcharles deny having made the decision, and Taylor stated

---

[5]     At the time Plaintiff was terminated, Walmart's disciplinary policy
provided for progressive discipline. Ex. H, ECF No. 26-1. The policy set
forth three levels (first written/yellow, second written/orange, and third
written/red) of disciplinary action. The policy notifies employees that they
may be terminated if their job performance does not improve after
disciplinary action or if their "unacceptable performance and/or conduct is
found to be serious." Id.

that he does not recall making the decision. See Jenkins Dep. at 83:20-23; ECF No. 26-1; Fitzcharles Dep. at 28:10-12, ECF No. 26-1; Taylor Dep. at 100:18-20, 102:19, ECF No. 26-1. Taylor also stated that he could not terminate an employee on his own authority because Walmart employees cannot be terminated without the approval of the store manager. Taylor Dep. at 37:2-9, ECF No. 26-1[6]; see also Fitzcharles Dep. at 29:6-8; ECF No. 26-1 ("Q. So, can the Asset Protection Manager make the decision to terminate an employe[e]? A. No."). Despite this, Jenkins denies any involvement whatsoever in the decision to terminate Plaintiff. See Jenkins Dep. at 83:20-23, ECF No. 24-3.

After the August 24, 2019 meeting, Plaintiff invoked Walmart's "open door" policy, which allows its employees to speak with a member of management to question or challenge decisions and disciplines imposed. See Fitzcharles Dep. at 30:10-15, ECF No. 26-1. When Plaintiff sought to speak with Jenkins, the store manager, about her termination pursuant to this policy, Jenkins told Plaintiff the decision was "out of her hands." Lugo Dep. at 58:2, ECF No. 26-1.[7]

---

[6]     "Q.   During your tenure as an Asset Protection Assistant Store Manager did you ever terminate an employee without the approval of the store manager?

        A.    I don't believe so."

Taylor Dep. at 37:10-14, ECF No. 26-1.

[7]     Fitzcharles testified in her deposition that pursuant to Walmart's open door policy, Jenkins would have had the power to reverse any decision to terminate Plaintiff even if Jenkins herself were not involved in the decision.

Taylor testified in his deposition that Walmart has a "zero tolerance" policy with respect to employee theft. Taylor Dep. at 43:5-14; ECF No. 24-1. However, Taylor was unable to identify the origin of such a policy or where that policy was written down. Id. at 43:23; see also id. at 48:7-15. And when Taylor was later asked by counsel "[w]ould you agree with me that nowhere in the core values of Walmart is what we would call a 'zero tolerance policy?,'" he answered "[y]es sir." Id. at 46:1-6.

During Plaintiff's deposition, she named at least six other Walmart employees who she had seen using HTH coupons on themselves. See Lugo Dep. at 66:2-68:19, ECF No. 26-1. Walmart stated in an answer to an interrogatory that it was unaware of any employee other than Plaintiff who was terminated for improper use of coupons. Answer to Interrogatory No. 3, Pl's Opp. Ex. E, ECF No. 26-1.

On November 20, 2020, Plaintiff filed her Complaint with this Court. The Complaint brings eight counts: (I) age-based discrimination in violation of the ADEA; (II) age-based discrimination in violation of the PHRA; (III) national origin discrimination in violation of Title VII; (IV) national origin discrimination in violation of the PHRA; (V) disability discrimination in violation of the ADA; (VI) disability discrimination in violation of the PHRA; (VII) retaliation in

6

violation of the FMLA; and (VIII) false imprisonment under
Pennsylvania law.

Walmart now seeks summary judgment on all Plaintiff's
claims. The motion is fully briefed and ripe for the Court's
review.

**III. LEGAL STANDARD**

Summary judgment is appropriate if no genuine dispute as to
any material fact exists and the moving party is entitled to
judgment as a matter of law. Fed. R. Civ. P. 56(a). "A motion
for summary judgment will not be defeated by 'the mere
existence' of some disputed facts, but will be denied when there
is a genuine issue of material fact." Am. Eagle Outfitters v.
Lyle & Scott Ltd., 584 F.3d 575, 581 (3d Cir. 2009) (quoting
Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986)). A
fact is "material" if proof of its existence or nonexistence
might affect the outcome of the litigation, and a dispute is
"genuine" if "the evidence is such that a reasonable jury could
return a verdict for the nonmoving party." Anderson, 477 U.S. at
248.

The Court views the facts in the light most favorable to
the nonmoving party. Am. Eagle Outfitters, 584 F.3d at 581.
"After making all reasonable inferences in the nonmoving party's
favor, there is a genuine issue of material fact if a reasonable
jury could find for the nonmoving party." Pignataro v. Port

7

Auth. of N.Y. & N.J., 593 F.3d 265, 268 (3d Cir. 2010) (citing
Reliance Ins. Co. v. Moessner, 121 F.3d 895, 900 (3d Cir.
1997)). While the moving party bears the initial burden of
showing the absence of a genuine issue of material fact, meeting
this obligation shifts the burden to the nonmoving party, who
must "set forth specific facts showing that there is a genuine
issue for trial." Anderson, 477 U.S. at 250 (quoting Fed. R.
Civ. P. 56 (1963)).

IV.  **DISCUSSION**

A.  **Plaintiff's Title VII, ADA, PHRA, and FMLA Claims**

The parties agree that Plaintiff's Title VII, ADA, PHRA,
and FMLA claims should be analyzed under the well-rehearsed
burden-shifting framework articulated in McDonnell Douglas Corp.
v. Green, 411 U.S. 792, 802 (1973).

The McDonnell Douglas framework proceeds in three steps.
First, Plaintiff must establish a prima facie case for each
claim. See Lichtenstein v. Univ. of Pittsburgh Med. Ctr., 691
F.3d 294, 303 (3d Cir. 2012) (evaluating an FMLA retaliation
claim); Starnes v. Butler Cnty. Ct. of Comm. Pleas, 971 F.3d
416, 426-27 (3d. Cir. 2020) (evaluating a Title VII
discrimination claim); Walton v. Mental Health Ass'n of
Southeastern Pa., 168 F.3d 661, 667-68 (3d Cir. 1999)

(evaluating an ADA discrimination claim).[8] Then, the burden
shifts to the employer to articulate a legitimate,
nondiscriminatory or nonretaliatory reason for the employee's
termination. McDonnell Douglas, 411 U.S. at 802. And finally, if
the employer articulates such reason, the plaintiff must then
establish by a preponderance of the evidence that the employer's
proffered reason is pretextual. See Tomasso v. Boeing, 445 F.3d
702, 706 (3d Cir. 2006). Under the burden-shifting framework,
"the ultimate burden of proving intentional discrimination
always rests with the plaintiff." Fuentes v. Perskie, 32 F.3d
759, 763 (3d Cir. 1994) (citing Tex. Dep't of Cmty. Affairs v.
Burdine, 450 U.S. 248, 253 (1981)).

### 1.   Prima Facie Case: National Origin and Disability Discrimination

Plaintiff's burden of establishing a prima facie case of
discrimination is "not onerous," as the goal "is to 'eliminate[]
the most common nondiscriminatory reasons' for the defendant's
actions[.]'" Anderson v. Wachovia Mortg. Corp., 621 F.3d 261,
271 (3d Cir. 2010) (quoting Burdine, 450 U.S. at 254).

To establish a prima facie case of discrimination under
Title VII, the ADA, and the PHRA, Plaintiff must demonstrate

---

[8]     Courts apply the same analytical framework to discrimination claims
under the PHRA and ADA. See Rinehimer v. Cemcolift, 292 F.3d 375, 382 (3d
Cir. 2002) ("the PHRA is basically the same as the ADA in relevant aspects
and Pennsylvania courts generally interpret the PHRA in accord with its
federal counterparts.") (internal quotations omitted).

that (1) she belongs to a protected class; (2) she was qualified

for her position; (3) she was subject to an adverse employment

action despite being qualified; and (4) the adverse employment

action occurred under circumstances raising an inference of

discrimination. Betts v. Summit Oaks Hosp., 687 F. App'x 206,

207 (3d Cir. 2017) (citing St. Mary's Honor Ctr. v. Hicks, 509

U.S. 502, 506-07 (1993)) (setting forth the elements of a Title

VII discrimination claim); see also Wishkin v. Potter, 476 F.3d

180, 185 (3d Cir. 2007) ("We have stated that 'the ADA . . . and

Title VII . . . serve the same purpose—to prohibit

discrimination in employment against members of certain classes.

Therefore, it follows that the methods and manner of proof under

one statute should inform the standards under the others as

well.'") (quoting Newman v. GHS Osteopathic, Inc., 60 F.3d 153,

157 (3d Cir. 1995)). Walmart does not contest that Plaintiff has

established the first three elements of prima facie

discrimination for each of her discrimination claims, but argues

that Plaintiff has not established that the circumstances of her

termination raise an inference of discrimination.

With respect to Plaintiff's claims for national origin

discrimination, the Court agrees that Plaintiff has not

established that the circumstances raise an inference of

discrimination. Plaintiff admitted in her deposition that she

never felt she was treated differently than other employees

10

because she was Puerto Rican. <u>See</u> Lugo Dep. at 157:20-22, ECF No. 24-1. While Plaintiff did testify that other employees misused HTH coupons and were not terminated, there is no evidence from which the Court can determine the national origin of these other employees. <u>See</u> <u>Frintner v. TruePosition</u>, 892 F. Supp. 2d 699, 711 (E.D. Pa. 2012) ("To raise an inference of discrimination for purposes of establishing a <u>prima facie</u> case of discrimination [under Title VII], a plaintiff may proffer evidence of another employee who is not in the plaintiff's class, received more favorable treatment than the plaintiff, and is similarly situated to the plaintiff." (citing <u>Fuentes</u>, 32 F.3d at 765)).

Nor will the Court consider the errata sheet to Plaintiff's deposition in which Plaintiff seeks to add, inter alia, that Jenkins "constantly belittled [Plaintiff] for being 'Puerto Rican' by calling [her] 'bruja.'" Lugo Dep. at 280:24-25, ECF No. 24-1. Federal Rule of Civil Procedure 30(e)(1)(b) requires that any changes to the form or substance of a deposition must be accompanied by a signed statement listing the changes "and the reasons for making them." The errata sheet contains no statement of reasons for the changes to Lugo's deposition testimony. The Court will accordingly disregard the changes to Plaintiff's deposition set forth therein. <u>See</u> <u>EBC, Inc. v. Clark Bldg. Sys., Inc.</u>, 618 F.3d 253, 266 (3d Cir. 2010) (finding that

the failure to provide a statement of reasons along with a
proposed change to a deposition suffices to strike the proposed
change) (citations omitted). Because there are therefore no
facts the Court may consider that support an inference of
national origin discrimination, Plaintiff has failed to state a
prima facie case of national origin discrimination under Title
VII or the PHRA.[9] Walmart's motion will be granted as to these
claims.

However, Plaintiff has established a prima facie case of
disability discrimination. Plaintiff's deposition testimony
highlights a level of hostility from Jenkins in connection with
Plaintiff's disability. Plaintiff testified that when she
discussed her disability with Jenkins, Jenkins told her she was
"faking." Lugo Dep. at 161:22, ECF No. 24-1. Jenkins' text
messages to Plaintiff in response to Plaintiff taking time off
from work may serve as further evidence of hostility toward
Plaintiff as a result of her disability. See Ex. F, ECF No. 26-1
(Jenkins texting Plaintiff "U hv [sic] real issues" and "don't
start with me"). Finally, Jenkins' alleged refusal to provide
Plaintiff with a stool, even though Plaintiff's accommodation

---

[9]      "[T]he PHRA is to be interpreted as identical to federal
antidiscrimination laws except where there is something specifically
different in its language requiring that it be treated differently. Fogleman
v. Mercy Hosp., Inc., 283 F.3d 561, 567 (3d Cir. 2002) (citation omitted).
The parties have identified no relevant distinction between the application
of Title VII and the PHRA to this case, so the Court will analyze these
claims together.

required it, supports an inference of disparate treatment based on her disability. Based on this evidence, Plaintiff has satisfied her burden of demonstrating circumstances that raise an inference of discrimination.

Walmart argues that Jenkins' statements cannot serve as the basis for an inference of discriminatory intent because it claims she played no part in the decision to fire Plaintiff. See Walden v. Georgia-Pacific Corp., 126 F.3d 506, 521 (3d Cir. 1997) ("We have generally held that comments by those individuals outside of the decisionmaking chain are stray remarks, which, standing alone, are inadequate to support an inference of discrimination."). But, as store manager, Jenkins was a central part of the "decisionmaking chain," and her role in Plaintiff's termination represents a genuine dispute of material fact. While Jenkins stated in her deposition she was not involved, neither Taylor nor Fitzcharles take credit for the decision, either. Moreover, Taylor and Fitzcharles both testified that they had no authority to terminate Plaintiff without Jenkins' approval. Because Jenkins' role in the decision to fire Plaintiff is therefore an issue of fact for trial, the Court must consider her statements and behavior in determining whether the evidence supports an inference of discrimination. Because the Court finds Jenkins' behavior does support such an

inference, Plaintiff has stated a prima facie case under her ADA
and PHRA claims.

### 2.    Prima Facie Case: FMLA Retaliation

In order to establish a prima facie case of FMLA
retaliation, Plaintiff must demonstrate (1) that she took FMLA
leave, (2) that she experienced an adverse employment action,
and (3) that a causal connection exists between her leave and
the adverse action. Conoshenti v. Pub. Serv. Elec. & Gas Co.,
364 F.3d 135, 146 (3d Cir. 2004). Walmart again does not dispute
that Plaintiff has satisfied the first two elements of her prima
facie case for the purposes of its motion, but argues that she
has not established a causal connection between her taking FMLA
leave and her termination. The Court disagrees.

In determining whether a causal connection exists between
protected activity and an adverse employment action, Third
Circuit case law has generally focused on two main factors: (1)
timing and (2) evidence of ongoing antagonism. See Abramson v.
William Paterson Coll of N.J., 260 F.3d 265, 288 (3d Cir. 2001)
(citations omitted). Temporal proximity between leave and an
adverse action may establish causality for a prima facie case of
retaliation only if it is "unusually suggestive of retaliatory
motive." Krouse v. Am. Sterilizer Co., 126 F.3d 494, 503 (3d
Cir. 1997) (internal quotation marks and citation omitted).
However, where temporal proximity alone is not unusually

14

suggestive of retaliation, "courts may look to the intervening period for demonstrative proof, such as actual antagonistic conduct or animus against the employee . . . or other types of circumstantial evidence, such as inconsistent reasons given by the employer for terminating the employee . . . that may give rise to an inference of causation when considered as a whole." Marra v. Phila. Hous. Auth., 497 F.3d 286, 302 (3d Cir. 2007) (first citing Woodson v. Scott Paper Co., 109 F.3d 913, 921 (3d Cir. 1997); and then citing Farrell v. Planters Lifesavers Co., 206 F.3d 271, 280-81 (3d Cir. 2000)).

The four-month gap between Plaintiff last taking FMLA leave and her termination, standing alone, is not unusually suggestive of retaliatory intent. See Williams v. Phila. Hous. Auth. Police Dep't, 380 F.3d 751, 760 (3d Cir. 2004) (concluding that a gap of over two months, without more, is not unduly suggestive of retaliation), superseded by statute on other grounds as recognized by Robinson v. First State Cmty. Action Agency, 920 F.3d 182, 187-89 (3d Cir. 2019). However, the evidence of record, taken as a whole, supports an inference that Walmart engaged in a pattern of antagonism against Plaintiff in the intervening period between Plaintiff's FMLA leave and her termination. As detailed above, Jenkins displayed a general hostility toward Plaintiff with respect to her disability in the time between Plaintiff's last instance of FMLA leave and her

15

termination. This pattern of hostility included responding
negatively in text messages when Plaintiff requested time off
work and failing to provide a stool as required by Plaintiff's
accommodation. See Ex. F, ECF No. 26-1 (Jenkins texting
Plaintiff "U hv [sic] real issues" and "don't start with me");
Ex. K at 2, ECF No. 26-1 (still image from a video with time
stamp July 15, 2019 showing Plaintiff at a cash register without
a stool).

Beyond this pattern of antagonism, there is other
circumstantial evidence that gives rise to an inference of
causation in this case. See Marra, 497 F.3d at 302 (directing
courts to consider "other types of circumstantial evidence" to
determine whether an inference of causation exists). Neither
Jenkins, Taylor, nor Fitzcharles admits to making the decision
to fire Plaintiff for her alleged misuse of HTH coupons. See id.
(inconsistencies in employer's reasoning for terminating
employee may serve as evidence of causation). And according to
Plaintiff's deposition testimony, numerous other employees used
HTH coupons but were not terminated. See id. (courts may
consider an "employer's treatment of other employees" in
determining whether evidence supports an inference of
causation). Making all reasonable inferences in Plaintiff's
favor, as is appropriate at this stage, the Court finds that the
record supports an inference that a causal link existed between

16

Plaintiff taking FMLA leave and her termination. Plaintiff has accordingly established a prima facie case of FMLA retaliation.

### 3. Pretext

Given that Plaintiff has stated a prima facie case on her claims for disability discrimination and FMLA retaliation, and Walmart has proffered a legitimate reason for Plaintiff's termination, namely, that she misused HTH coupons, the Court must now consider whether Plaintiff has produced evidence suggesting that this reason is pretextual. To demonstrate pretext at the summary judgment stage, "the plaintiff must point to some evidence, direct or circumstantial, from which a factfinder could reasonably either (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action." Fuentes, 32 F.3d at 764 (citing Hicks, 509 U.S. at 517).

Plaintiff has presented sufficient evidence of pretext to survive summary judgment. The fact that none of Plaintiff's supervisors admits to making the decision to terminate Plaintiff is circumstantial evidence that would allow a factfinder to doubt Walmart's proffered reasoning. See generally Sabbrese v. Lowe's Home Ctrs., Inc., 320 F. Supp. 2d 311, 326 (W.D. Pa. 2004) (finding that plaintiff had demonstrated pretext when "no one . . . acknowledges making the ultimate decision to fire [the

plaintiff]") (citing <u>Fuentes</u>, 32 F.3d at 765). Plaintiff's testimony that other employees used HTH coupons without being terminated is further evidence that supports a finding of pretext. Moreover, the fact that Plaintiff was immediately terminated under a so-called "zero-tolerance policy" for her alleged misuse of, at most, $2.50 in HTH coupons, when Walmart in fact had a progressive discipline policy that makes no reference to such a zero-tolerance policy, could reasonably be viewed by a jury as evidence of pretext. This lack of a zero-tolerance policy is further supported by Plaintiff's testimony that numerous other employees misused HTH coupons without being terminated. Under these circumstances, the Court will deny Walmart's motion for summary judgment as to Plaintiff's claims for disability discrimination under the ADA and PHRA and for retaliation in violation of the FMLA.

**B.   Plaintiff's False Imprisonment Claim**

Under Pennsylvania law, an actor is liable for false imprisonment if "(a) he acts intending to confine the other or a third person within boundaries fixed by the actor, and (b) his act directly or indirectly results in such a confinement of the other, and (c) the other is conscious of the confinement or is harmed by it." <u>Krochalis v. Ins. Co. of N. Am.</u>, 629 F. Supp. 1360, 1370 (E.D. Pa. 1985) (quoting <u>Gagliardi v. Lynn</u>, 285 A.2d 109, 111 (1971)). "The confinement within the boundaries fixed

by the defendant must be complete; if there is a known, safe means of escape, involving only a slight inconvenience, there is no false imprisonment." Id. (quoting Chicarelli v. Plymouth Garden Apartments, 551 F. Supp. 532, 541 (E.D. Pa. 1982)).

Plaintiff alleges that she was falsely imprisoned in the August 24, 2019 meeting with Taylor and Fitzcharles because they asserted legal authority over her when they allegedly recited her Miranda rights and demanded that she repay the $2.50 to Walmart or wait for the police. See Chicarelli, 551 F. Supp. at 541 (confinement for the purposes of false imprisonment includes taking a person into custody under an asserted legal authority). However, Plaintiff admitted in her deposition that the door to the room remained open. See Lugo Dep. 82:24-83:3, ECF No. 24-1. Fitzcharles testified that she always recited a "freedom to leave statement" at the start of every interview that informed the employee being interviewed that she was free to leave. Fitzcharles Dep. at 75:14-21; 86:24-87:7. And Taylors' notes from the August 24, 2019 meeting reflect that Fitzcharles recited the "freedom to leave" statement to Plaintiff. See ECF No. 24-1 at 81. The record therefore reflects that Plaintiff knew she was free to leave the meeting, so she cannot satisfy the "confinement" requirement of her false imprisonment claim. The Court will accordingly grant Walmart's motion as to this claim.

### C.    Punitive Damages

Walmart finally moves for summary judgment on Plaintiff's request for punitive damages. Plaintiff concedes that punitive damages are not available for her FMLA retaliation claim nor her claims under the PHRA. However, as Plaintiff points out, punitive damages are available under the ADA for discrimination that is intentional and engaged in "with malice or reckless indifference to" a plaintiff's federally protected rights. 42 U.S.C. § 1981a(b)(1); see also Kolstad v. Am. Dental Ass'n, 527 U.S. 526, 534-35 (1999) (discussing the imposition of punitive damages in "certain classes of . . . ADA violations"); Gagliardo v. Connaught Lab'ys, Inc., 311 F.3d 565, 573 (3d Cir. 2002) ("Punitive damages are available under the ADA when 'the complaining party demonstrates that the respondent engaged in a discriminatory practice . . . with malice or with reckless indifference.'" (quoting 42 U.S.C. § 1981a(b)(1))).

Viewing the record as a whole, the Court finds that a genuine issue of material fact exists as to whether Walmart acted with malice or reckless indifference to Plaintiff's rights under the ADA. As previously discussed, Plaintiff has produced evidence suggesting that Walmart was aware of her disability and had granted her an accommodation, but failed to honor it. Plaintiff's testimony regarding Jenkins' comments on her disability may also be considered by a jury as evidence of

20

malice or reckless indifference. Walmart's motion for summary judgment will therefore be denied as to Plaintiff's request for punitive damages. See Cronin v. Martindale Andres & Co., 159 F. Supp. 2d 1, 8 (E.D. Pa. 2001) ("To survive a motion for summary judgment on a claim for punitive damages under Title VII, a plaintiff must point to evidence that creates a genuine issue of fact as to whether defendants acted with 'malice or with reckless indifference to [her] federally protected rights.'" (quoting Kolstad, 527 U.S. at 530)).

## V.   CONCLUSION

For the foregoing reasons, Walmart's motion for summary judgment will be granted in part and denied in part. The motion will be granted as to Plaintiff's age discrimination claims under the ADEA and PHRA, Plaintiff's claims for national origin discrimination under Title VII and the PHRA, and Plaintiff's claim for false imprisonment. The motion will be denied as to Plaintiff's claims for disability discrimination and FMLA retaliation.

An appropriate order follows.